UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICROMETL CORP.,<br>　　　　Plaintiff, | )<br>)<br>) |
| vs. | )　　1:08-cv-0321-LJM-WTL<br>) |
| TRANZACT TECHNOLOGIES, INC.,<br>　　　　Defendant. | )<br>)<br>) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS/TRANSFER FOR IMPROPER VENUE PURSUANT TO RULE 12(b)(3) AND/OR 28 U.S.C. § 1406**

This matter is before the Court on defendant's, TranzAct Technologies, Inc. ("TranzAct"), Motion to Dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Rule 12(b)(3)") or pursuant to 28 U.S.C. § 1406 for improper venue or alternatively, Motion to Transfer to the United States District Court for the Northern District of Illinois, Eastern Division, to cure venue defects pursuant to § 1406.

On February 25, 2008, plaintiff, MicroMetl Corporation ("MicroMetl"), filed this action in Marion County, Indiana, against TranzAct, alleging "overbilling" under the parties' shipper services agreement. On March 10, 2008, TranzAct removed the matter to this Court on the basis of diversity jurisdiction. The Court has fully considered the parties' arguments and, for the reasons discussed below, **DENIES** TranzAct's Motion to Dismiss pursuant to Rule 12(b)(3) or § 1406 but **GRANTS** TranzAct's Motion to Transfer pursuant to § 1406.

## I. BACKGROUND

MicroMetl brings this suit against TranzAct, alleging that TranzAct overbilled MicroMetl for shipping expenses associated with products sold to a certain customer that was traditionally responsible for shipping expenses itself. Pl.'s Compl. ¶¶ 3, 6. MicroMetl alleges that this practice was known to TranzAct. *Id.* ¶ 5. MicroMetl also alleges that TranzAct overbilled charges for another of MicroMetl's customers in an undetermined amount. *Id.* ¶ 7. MicroMetl contends that TranzAct overbilled it in excess of $100,000.00. *Id.* ¶ 8. MicroMetl filed suit against TranzAct in Marion County Circuit Court located in Marion County, Indiana, requesting compensatory damages on February 25, 2008. TranzAct properly removed the case to this Court on the basis of diversity jurisdiction. TranzAct now requests this Court to dismiss MicroMetl's case based on a forum selection clause that requires all actions and lawsuits concerning the agreement be brought in the Federal or State Courts located in Cook or DuPage Counties, Illinois. Alternatively, if the Court concludes that justice so requires, TranzAct requests that the Court transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division.

In 2003, MicroMetl and TranzAct entered into a contract for shipper services, titled "Freedom Logistics Network ("FLN") 21st Century Shipper Global Transportation Services Agreement" (the "Contract"), whereby TranzAct agreed to manage freight shipping for MicroMetl and audit MicroMetl's shipping expenses. *Id.* ¶¶ 1, 2. The second and third paragraphs on the first page of that Contract provide:

> The principles for the FLN that are part of our service offerings are contained in their entirety in our FREEDOM LOGISTICS NETWORK 21st CENTURY SHIPPER TRANSPORTATION SERVICES, which can be found at a secure link on our website which we will provide to you before you partner with us. These written principles are what govern both our commitments and we want them readily

> available at all times so you can access them for your understanding and use.
>
> In addition to providing you with pricing contained within and discounted off of the FREEDOM 2020 © and 2021 © for use in selecting transportation/logistics services which are available in the FLN under our contracts, TranzAct will facilitate your logistics processes with transportation payment, audit services and management reports. These services are subject to standard principles that are on the secure link on our website. These rules govern both of our commitments that arise from our signatures implementing your membership in the Freedom Logistics Network.

*Id.* Ex. A. This page was signed by Gerald Holman, Vice President and Chief Financial Officer of MicroMetl; Mark Webber, Vice President of Manufacturing at MicroMetl; and Jean H. Regan, President of TranzAct.

The second and third pages of this Contract reference software, rates, charges, and payment options. The first paragraph of the second page notes that rates for Member Shippers (such as MicroMetl) and updated listings of Member Carriers may be found on the FLN Internet Website. *Id.* at 2. That paragraph also says that "the applicable rates will be those that appear on the most current version of the FLN Internet Website." *Id.* The third page discusses how Member Shippers may receive funding information, noting that the first option is to receive weekly funding information by e-mail at no charge. *Id.* Nowhere in this three (3) page Contract is there a reference to a forum selection clause.

With the instant motions, TranzAct submitted roughly twenty pages of text apparently printed from http://www.tranzact.com. Def's Ex. A. These pages are seemingly visible only to Members who access the website.[1] The first of these pages is an eight-page document also titled "Freedom

---

[1] The Court attempted to access these pages but could not because of login restrictions. The Court is not a registered "Insider" and has no username or password. *See* http://www.tranzact.com/inside/login.asp. Michael Regan declared that the principles are only available to TranzAct's customers, for they provide the company with a competitive advantage. Regan April 17, 2008, Decl. ¶ 15.

Logistics Network 21st Century Shipper Transportation Agreement." As mentioned in the signed three-page Contract, the website includes many more governing principles of TranzAct's agreements. Such principles address integral parts of TranzAct's agreements, including FLN services; member shipper participation; supplements and modifications; license; propriety information; limitation of liability; and assignment. Article XV, titled "Controlling Law," addresses "the applicable laws and venues to the Agreement." *Id.* at 7-8. Article XV reads, in relevant part:

> A.—The parties specifically agree that this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois except where Federal law is applicable.
> B.—The parties mutually consent and submit to the jurisdiction and venue of the Federal and/or State courts located in Cook or DuPage Counties, Illinois and any action or suit concerning this Agreement or related matter shall only be brought by the parties in these Federal or State courts with appropriate subject matter jurisdiction therein.
> C.—The parties mutually acknowledge and agree that they shall not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum, lack of jurisdiction in any action or suit brought in accordance with the foregoing.

Id.

In addition to the website pages, TranzAct submitted two declarations of Michael A. Regan ("Regan"). Regan declared that he is the Chief Executive Officer of TranzAct and has been involved with motor carrier transportation for more than twenty-five years. Regan April 17, 2008, Decl. ¶¶ 2, 4. Regan also asserted that he had never heard of the term "freight manager" used to describe any third party logistics company in the motor carrier transportation industry. *Id.* ¶ 6. Regan provided several examples of companies who also post governing contract terms and rules on their websites and then incorporate them by reference on the bill of lading. *Id.* ¶¶ 11, 12. Finally, Regan declared: "I personally met with Mark Webber of MicroMetl at his place of business. I explained TranzAct's

services, and, as I do with all of our customers, I would also have mentioned that standard principles governing our relationship were available upon request." *Id.* ¶ 16. Regan explained, "We do not distribute these principles to our competitors; we advise our customers that an access PIN (personal identification number) is available upon request." *Id.* ¶ 15.

In response to TranzAct's Motion to Dismiss, MicroMetl submitted Mark Webber's ("Webber") affidavit. In his affidavit, Webber stated that he is the General Manager of MicroMetl and that he signed the aforementioned Contract, which was presented by TranzAct as a three-page document. Webber Aff. ¶¶ 2, 3, 4. Webber attested that TranzAct is a "freight manager" and that "it is standard industry practice for freight managers to include all contract terms in a printed document to be signed by the customer." *Id.* ¶¶ 5, 7. Furthermore, Webber stated that the Contract that he signed is similar to other freight manager contracts that he has seen and appears to be a standard industry document. *Id.* ¶ 8. He also attested that it is not standard industry practice to put contract terms on a website. *Id.* ¶ 13. Although he admitted that MicroMetl has used and regularly does use freight manager websites to look up shippers and prices, Webber stated that he was never informed that the Contract he signed was only "part of" MicroMetl's agreement with TranzAct, or that additional terms and conditions of the Contract were contained on TranzAct's website. *Id.* ¶¶ 10, 11, 12. Finally, Webber stated that he understood that the Contract contained all terms and conditions of MicroMetl's agreement with TranzAct; that he had never seen the twenty pages of text presumably printed from TranzAct's website, including the forum selection clause; and that he was neither informed of nor had knowledge of the website's forum selection clause. *Id.* ¶¶ 9, 14, 15, 16.

## II. STANDARD FOR MOTION TO DISMISS

TranzAct asserts improper venue based on a forum selection clause and therefore requests dismissal or transfer either under Rule 12(b)(3) or § 1406. Rule 12(b)(3) allows a defendant to make a defensive motion for improper venue, as opposed to a responsive pleading. However, even "if a defendant prevails on a Rule 12(b)(3) challenge, the Court has the discretion to decide whether the action should be dismissed or transferred to an appropriate court." *Audi AG & Volkswagen of Am. Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). Additionally, "on a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* Section 1406 provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Therefore, this Court must decide whether TranzAct's forum selection clause should be enforced, and if so, whether MicroMetl's case should be dismissed or transferred to the Northern District of Illinois, Eastern Division. The application of Illinois law to the underlying case is not contested by the parties.

## III. DISCUSSION

### A. INCORPORATION OF THE FORUM SELECTION CLAUSE

In this case, the validity of the forum selection clause turns on whether TranzAct sufficiently incorporated the clause into the Contract. "A document is incorporated by reference into the parties' contract only if the parties intended its incorporation." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730,

736 (7th Cir. 2002) (applying Illinois law). Moreover, in order for a document to be incorporated into a contract, the parties must have clearly and specifically intended incorporation. *Id.* Applying this principle to the case at bar, MicroMetl has failed to show that TranzAct's website's principles were improperly incorporated into its Contract with TranzAct.

The plain language of the signed three-page Contract sufficiently references, and thereby incorporates, the principles contained on TranzAct's website. The Contract provides that the principles in their entirety can be found at a secure link on TranzAct's website, which would be provided before joining as a partner. The Contract clearly and specifically notes: "These written principles are what govern both our commitments and we want them readily available at all times so you can access them for your understanding and use." The Contract continues: "These services are subject to standard principles that are on the secure link on our website." Finally, the Contract provides: "These rules govern both of our commitments that arise from our signatures implementing your membership in the FREEDOM LOGISTICS NETWORK." Pl's Ex. A. As their signatures suggest, both TranzAct and MicroMetl intended to be bound by the words of the written three-page Contract, which repeatedly acknowledged the governing principles on TranzAct's website and made clear that MicroMetl would be subject to these principles. Therefore, the parties intended the website's incorporation into the Contract.

Furthermore, the fact that Webber did not thoroughly read the three-page Contract does not preclude the validity of the forum selection clause. "[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Therefore, Webber is presumed to have read the entirety of the three-page Contract, including all the references

to the governing principles on TranzAct's website. That he failed to take action to review such incorporated principles before signing the Contract does not render the forum selection clause invalid. Additionally, the fact that TranzAct's Contract referred to the website's governing body as "principles" and "rules," and not "terms" or "conditions" or even "forum selection clause," does not alter the outcome. The three-page Contract's use of both "principles" and "rules" is sufficient to put Webber on notice that MicroMetl would be bound by additional provisions contained on TranzAct's website. Therefore, after considering the plain language of the Contract and MicroMetl's express agreement to its provisions, the Court concludes that the principles included on TranzAct's website were properly incorporated into the Contract.

### B. REASONABLENESS OF THE FORUM SELECTION CLAUSE

Given that the forum selection clause was properly incorporated into the Contract, the Court must now decide whether it is reasonable. Generally forum selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972). Forum selection clauses "are 'unreasonable' (1) if their incorporation into the contract was the result of fraud, undue influence, or unfair bargaining power; (2) if the selected forum is so 'gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court'; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (internal citations omitted). MicroMetl has not shown that TranzAct's forum selection clause is unreasonable under the circumstances.

The application of the forum selection clause in this case is fundamentally fair. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). The forum selection clause's incorporation into the Contract was not the result of fraud, undue influence, or unfair bargaining power, and there have been no allegations of such contract formation defenses. In fact, the principles on TranzAct's website, including the forum selection clause, were made available to MicroMetl before it signed as a partner, but no one at MicroMetl ever asked to review the website's principles that were incorporated into the Contract.

Moreover, TranzAct included a forum selection clause as a principle on its website for legitimate purposes. In paragraph twenty of his April 17, 2008, declaration, Regan noted that because TranzAct conducted business across the United States, there was not only a need for commonly applicable and centrally available standard principles, but also for a singular venue and body of law to govern any issues that arose under the Contract. Therefore, the forum selection clause was not included as a means to discourage potential plaintiffs from filing suits.

Finally, the forum selection clause neither deprives MicroMetl of its day in court nor contravenes any strong public policy. MicroMetl admitted in its response to TranzAct's Motion to Dismiss that "litigating this dispute in Chicago is no more burdensome or inconvenient to MicroMetl that litigating in Indianapolis is to TranzAct." As discussed above, there is evidence that MicroMetl consented to being sued in Chicago. Finally, the enforcement of the forum selection clause does not contravene any strong public policy. Those who do not have access to the Internet to review the principles on TranzAct's website will nonetheless be made aware of such principles before signing a similar three-page contract and may take other actions to gain access to the web-based principles (such as requesting TranzAct to print the pages, as it did for the Court).

### C. MICROMETL'S CASE IS TRANSFERRED

Because the forum selection clause was both properly incorporated and reasonable, the Court's final step is to determine whether MicroMetl's complaint should be dismissed or, alternatively transferred to the District Court for the Northern District of Illinois, Eastern Division. If justice so requires, the Court may transfer a case for improper venue as opposed to dismissing. Although "the district court has broad discretion to grant or deny a motion to transfer the case," *Cote v. Wadell*, 796 F.2d 981, 985 (7th Cir. 1986), generally "[t]he interests of justice may require transfer rather than dismissal if the plaintiff mistakenly filed suit in the wrong district and the statute of limitations has since run." *Farmer v. Levenson*, 79 F. App'x 918, 922 (7th Cir. 2003). In this case, the statute of limitations has not run, because there is a "ten-year (10) statute of limitations applicable to a suit in Illinois on a written contract." *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1044 (7th Cir. 2007). *See also F.D.I.C. v. Wabick*, 335 F.3d 620, 627 (7th Cir. 2003) ("Illinois law provides for a ten-year limitations period for the contract actions"). However, MicroMetl's filing of this suit in Marion County, Indiana, was apparently a mistake, and MicroMetl is likely to refile quickly in the Northern District of Illinois, Eastern Division to pursue its non-frivolous complaint. Therefore, the Court concludes that MicroMetl and the judicial system is most efficiently served by **TRANSFERRING** MicroMetl's case to the Northern District of Illinois, Eastern Division pursuant to § 1406.

## IV.  CONCLUSION

For the foregoing reasons, the Court orders the Clerk of the Court to **TRANSFER** MicroMetl's case to the District Court for the Northern District of Illinois, Eastern Division.

IT IS SO ORDERED this 5th day of June, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distributed electronically to:

Thomas W. Blessing
STEWART & IRWIN
tblessing@silegal.com

Douglas Robert Brown
STEWART & IRWIN
dbrown@silegal.com

Matthew P. Barrette
SULLIVAN HINCKS & CONWAY
mattbarrette@shlawfirm.com

Ryan A. Mahoney
SULLIVAN HINCKS & CONWAY
ryanmahoney@shlawfirm.com

Thomas E. Schulte
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
tschulte@scopelitis.com

Daniel C. Sullivan
SULLIVAN HINCKS & CONWAY
dansullivan@shlawfirm.com